```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
BABATUNDE FAMOJURE,                :
                                   :
               Petitioner,         :
                                   :
      -against-                    :
                                   :   05 civ. 6452(KMW)
WILLIAM MAZZUCA, Superintendent,   :   Opinion and Order
Fishkill Correctional Facility,    :
                                   :
               Respondent.         :
-----------------------------------X
```

WOOD, U.S.D.J.:

Petitioner Babatunde Famojure seeks a writ of habeas corpus to challenge his 2002 conviction in New York County Court, County of Westchester, on one count of Robbery in the First Degree. The trial court sentenced him to a term of imprisonment of ten years, a sentence that he is currently serving.

Petitioner asserts three claims. First, he argues that the trial court erroneously admitted inculpatory statements that he made during a police interrogation that proceeded for hours before he received Miranda warnings. See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). Second, Petitioner argues that he was denied his Sixth Amendment right to the effective assistance of counsel because his trial counsel failed to object to inadmissible evidence or ask the court to question jurors about a possible incident of tainting. Third, Petitioner argues that his sentence is unreasonably harsh.

1

I. Background

   A. The Robbery and Investigation

   On the morning of November 6, 2000, four men participated in the armed robbery of a supermarket in Yonkers, New York. After the robbery, the men fled in a 1997 black BMW, owned by Petitioner (the "BMW"). Later that day, the New York City Police Department found Petitioner's BMW parked in the Bronx, and Yonkers detectives impounded the car.

   That same day, Petitioner visited a Bronx police precinct to report that his BMW had been stolen. Detectives Marinelli and Conca, two Yonkers detectives, traveled to the Bronx precinct and asked Petitioner if he would accompany them to the Yonkers police precinct to discuss the theft of his car. According to Detective Marinelli's trial testimony, Petitioner voluntarily accompanied them to the Yonkers police station. Petitioner was not placed in restraints or subjected to a pat-down or other search, and did not request to speak with an attorney. See Tr. 144-46.[1] Detectives Marinelli and Conca did not inform Petitioner of his Miranda rights at any time.

   When Petitioner arrived at the Yonkers police station, he

---

[1] At trial, Petitioner provided a different account of these events, stating that he was physically threatened by one of the detectives, and that he repeatedly asked for a lawyer following his arrival at the Yonkers police station. See Tr. 417-19, 481. However, Petitioner does not raise these allegations in his habeas petition, so the Court does not consider them. See Pet. 5; Mem. of Law 8-9.

2

was questioned by two other Yonkers detectives, Detectives Maher and Powrie, again without receiving Miranda warnings. According to Detective Maher's trial testimony, the detectives did not ask Petitioner about the robbery. Instead, the detectives questioned Petitioner about his report that his BMW had been stolen. The detectives offered Petitioner food, drink, and an opportunity to use the bathroom before the interview began. Petitioner did not request to speak with a lawyer. Tr. 186-91.

After questioning Petitioner about the theft of his car for approximately three to four hours, Tr. 192, 420, the detectives informed Petitioner that his BMW had been used in a robbery earlier that day. Detective Maher testified that Petitioner replied, "I'll tell you that I was involved, but I don't want to get anyone else involved." Tr. 192. Following Petitioner's statement, Detective Maher stopped the interview, retrieved a Miranda warning card from his desk, read the card to Petitioner, confirmed Petitioner understood his rights, and had Petitioner sign and date the Miranda card. Petitioner did not request to speak to an attorney. Tr. 192-98.

Petitioner then made an oral statement to the detectives, admitting that he robbed the supermarket and falsely reported that his BMW had been stolen. Tr. 198-202. A detective typed up Petitioner's oral statement, and Petitioner reviewed and signed the written statement. Tr. 202-08. Petitioner later identified

3

his three accomplices in the robbery.

On June 15, 2001, a Westchester County Grand Jury indicted Petitioner on charges stemming from the robbery. Each of Petitioner's accomplices pleaded guilty. In their plea allocutions, two of Petitioner's accomplices gave sworn statements that named Petitioner as the mastermind and organizer of the plot to rob the supermarket.

    B. <u>Pre-Trial Suppression Hearing</u>

Following his indictment, Petitioner moved to suppress his statements on the ground they were made involuntarily. On September 24, 2001, the Westchester County Court ordered a <u>Huntley</u> hearing on Petitioner's motion. See <u>People v. Huntley</u>, 204 N.E.2d 179 (N.Y. 1965). Following the hearing, the court ruled that Petitioner voluntarily accompanied the police to Yonkers, and voluntarily made statements to the police after being advised of his <u>Miranda</u> rights.

    C. <u>Trial and Subsequent Proceedings</u>

Jury selection in Petitioner's trial commenced on February 2, 2002. During the trial, the prosecutor introduced testimony from witnesses to Petitioner's crime and escape from the crime scene. Two of Petitioner's accomplices also testified regarding Petitioner's role in the crime. Opp. Aff. 4. Petitioner argued that he did not commit the crime, and repeated his claim that his statement to the police was involuntary and given without the

4

benefit of Miranda warnings. Id. On February 13, 2002, the jury returned its verdict, finding Petitioner guilty of Robbery in the First Degree.

Petitioner appealed his conviction and raised, inter alia, the three claims now before this Court. On June 1, 2004, the New York Appellate Division affirmed Petitioner's conviction. See People v. Famojure, 777 N.Y.S.2d 669 (N.Y. App. Div. 2004). On July 23, 2004, the New York Court of Appeals denied Petitioner leave to appeal. See People v. Famojure, 816 N.E.2d 573 (N.Y. 2004).

II. Discussion

A. Standard of Review

When a state court has adjudicated a habeas petitioner's claims on the merits, this Court may only grant a writ of habeas corpus if it concludes that the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The § 2254(d) standard of review applies to Petitioner's action because the New York Appellate Division addressed the substance of Petitioner's claims when it affirmed his conviction. See Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002) (holding that a state court adjudicates a claim on the

merits when it (1) disposes of the claim on the merits and (2) reduces its disposition to judgment).

A state court decision is "contrary to" federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. In reviewing a state court's factual findings, the Court presumes that "a determination of a factual issue made by a State court [is] correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003).

B. Admissibility of Petitioner's Statements to Police

Petitioner argues that his statements to the police should have been excluded from trial because the police interrogated him for hours before informing him of his Miranda rights. The New York Appellate Division previously considered and rejected Petitioner's argument, holding that "[Petitioner's] initial

6

inculpatory statement [to the police] was not the result of custodial interrogation, and his subsequent inculpatory statements were voluntarily given after he was properly informed of his Miranda rights and agreed to waive them." People v. Famojure, 777 N.Y.S.2d at 669 (citations omitted). This conclusion is neither contrary to, nor an unreasonable application of, clearly established federal law, and this Court therefore defers to the Appellate Division's determination.[2]

In considering Petitioner's claim, the Appellate Division applied the well-established principle that "Miranda warnings are due only when a suspect interrogated by police is 'in custody.'" Thompson v. Keohane, 516 U.S. 99, 102 (1995). In defining "custody," the Appellate Division cited the New York Court of Appeals opinion People v. Yukl, which held that an interrogation is custodial only if "an innocent individual . . . would have reasonably considered himself in custody." 25 N.Y.2d 585, 590-91 (N.Y. 1969). Yukl's definition of custody is consistent with federal law. See Keohane, 516 U.S. at 112 (holding that an interrogation is non-custodial if "a reasonable person would have felt . . . at liberty to terminate the interrogation and leave");

---

[2] The Court applies the "contrary to" and "unreasonable application" prong of § 2254(d) to Petitioner's claim that his statements to police were inadmissible, because Petitioner's claim raises a mixed question of law and fact. See Thompson v. Keohane, 516 U.S. 99, 102 (1995); Overton v. Newton, 295 F.3d 270, 277 (2d Cir. 2002).

7

Harris v. Woods, No. 05 Civ. 5582, 2006 WL 1140888, at *38
(S.D.N.Y. May 1, 2006) (citing Yukl in its discussion of the
federal definition of "custody"), rep. & rec. adopted by 2006 WL
1975990 (S.D.N.Y. July 10, 2006).  The New York Appellate
Division also reasonably applied Yukl to the facts of
Petitioner's case.  There is ample evidence on the record
supporting the conclusion that when Petitioner was being
questioned about the theft of his car, a reasonable person would
have felt comfortable leaving the Yonkers police precinct.  In
particular, Detectives Maher and Powrie did not ask questions
about the robbery, and Petitioner was not searched or shackled.[3]
Because the Appellate Division's application of law to facts was
not unreasonable, there is no basis for habeas relief.

    C. Petitioner's Ineffective Assistance of Counsel Claim

    Petitioner argues that he was denied the effective
assistance of counsel, in violation of the Sixth Amendment.  In
order to demonstrate ineffective assistance of counsel, a
petitioner must show (1) "that counsel's representation fell
below an objective standard of reasonableness," and (2) that but
for counsel's deficient performance, "there is a reasonable

---

[3]Petitioner also suggests that he should have been given a
Miranda warning because the police knew that Petitioner was a
suspect.  However, "[a] policeman's unarticulated plan has no
bearing on the question whether a suspect was 'in custody' at a
particular time; the only relevant inquiry is how a reasonable
man in the suspect's position would have understood his
situation."  Berkemer v. McCarty, 468 U.S. 420, 442 (1984).

8

probability that . . . the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Even assuming arguendo that the alleged mistakes Petitioner cites were constitutionally deficient errors, Petitioner fails to meet the requirements of Strickland because he does not show that there is a reasonable probability that these errors changed the outcome of his trial.[4]

Petitioner argues that his lawyer should have asked the trial court to inquire whether any jurors had communicated with a juror who was dismissed because she was overheard stating that Petitioner was "guilty as sin." However, this Court presumes that the jurors followed the trial court's instructions to decide Petitioner's case objectively and solely upon the evidence presented at trial. See Tr. 641-42; United States v. Downing, 297 F.3d 52, 59 (2d Cir. 2002) (noting that juries are presumed to follow their instructions). Petitioner offers no evidence to overcome this presumption, and therefore fails to demonstrate that there is a reasonable likelihood that this alleged error prejudiced his case.

Petitioner also argues that his lawyer should have objected

---

[4] The Second Circuit has recently suggested that People v. Benevento, 697 N.E.2d 584 (N.Y. 1998), relied upon by the New York Appellate Division in rejecting Petitioner's ineffective assistance of counsel claim, may be contrary to Strickland. See Henry v. Poole, 409 F.3d 48, 69-71 (2d Cir. 2005). However, the Court need not address this issue because Petitioner's claim also fails under Strickland.

9

when the prosecutor asked Detective Marinelli whether, when he met with Petitioner's mother and a man accompanying her at the police station, either person requested a lawyer on Petitioner's behalf. Petitioner argues that these questions should have been stricken because they were leading and requested hearsay evidence. However, even if Petitioner's counsel erred, the mistake was minor and there is no reasonable probability that it affected the outcome of the trial. "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." See Strickland, 466 U.S. at 695. The totality of evidence strongly supports Petitioner's conviction. Among other things, the prosecution produced (1) an eyewitness identification of Petitioner and corroborating eyewitness testimony; (2) testimony by two of Petitioner's accomplices that Petitioner planned, orchestrated, and participated in the robbery; and (3) Petitioner's own statements confessing to the robbery. Because Petitioner's guilt was overwhelmingly proven at trial, his ineffective assistance of counsel claim is unavailing.

D. Petitioner's Excessive Sentence Claim

Petitioner argues that his ten-year prison sentence was unreasonably harsh. However, "[i]t is well-settled . . . that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law." Jackson v. Lacy, 74 F. Supp. 2d 173, 181 (N.D.N.Y. 1999); see also White v. Keane, 969

10

F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."). New York's maximum prison term for Robbery in the First Degree is twenty-five years. See N.Y. Crim. Law § 70.02(3)(a) (McKinney 2007). Because Petitioner's ten-year prison sentence falls below this statutory maximum, Petitioner has no basis for federal habeas relief.

III. Conclusion

For the reasons set forth above, the Court DENIES Petitioner's habeas petition (D.E. 1). As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. 2253(c)(1)(A); see Finkelstein v. Spitzer, 455 F.3d 131, 133 (2d Cir. 2006). The Clerk of the Court is directed to close this case. Any pending motions are moot.

SO ORDERED

Dated:     New York, New York
           November 5, 2007

                                    /s/ Kimba Wood
                                    _____
                                    Kimba M. Wood
                                    United States District Judge